C. D. MILLER, Appellee, v. CHARLES H. BAKER, Appellant.

**Partnership:** SHARING OF LOSSES: EVIDENCE. To constitute a part-
1  nership there must be an agreement between the parties to share the losses as well as profits. In the instant case the evidence fails to show a partnership, and therefore refusal to direct a verdict or to transfer the cause to the equity docket, on the theory that it involved an accounting between partners, was proper.

**Contracts:** ACTION: EVIDENCE: INSTRUCTIONS. Under an agreement
2  between promoters of a corporation that in case either sold his interest therein the proceeds should be divided between them, the evidence is held sufficient to require submission of the question whether defendant had any interest in the business, and whether he had sold the same, and to support a verdict for plaintiff.

Same: COUNTERCLAIM: INSTRUCTIONS. Where there was a dispute in the evidence concerning the liability of plaintiff on defendants counterclaim, an instruction submitting the issue and directing the jury to consider the counterclaim in arriving at their verdict, if they found the plaintiff liable, and if not to disregard it and to consider only the other items, was proper.

Evidence: MOTION TO STRIKE. A motion to strike out all the evidence submitted as incompetent, irrelevant and immaterial, was properly overruled, because not sufficiently specific, where part of the testimony offered was clearly proper, and the party had not concluded his evidence on the subject.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, MARCH 18, 1913.

SUIT to recover certain moneys alleged to be due plaintiff from defendant. There was a trial to a jury, verdict and judgment against defendant. He appeals.—*Affirmed.*

*John McLennan,* for appellant.

*Henry & Henry,* for appellee.

PRESTON, J.—The items sued for in counts 1 and 2 of the petition are admitted by the defendant in his answer. The allegations in count 3 of the petition are substantially as follows: That in 1909 plaintiff and defendant organized a corporation under the laws of Iowa, known as the Income Protective Accident Association; that they organized the same under an unwritten contract, by which they were to share equally in the expense of organizing and operating said company, and in any profits derived therefrom, or from any sales which either might make of his interest in said company, and were to divide any sums returned by said company to either of them for moneys advanced by them to said company; that plaintiff sold his interest in the company for $400, and, pur-

suant to the agreement aforesaid, paid Baker one-half thereof; that Baker sold his interest and received $600 therefor; and that, under the agreement aforesaid, there is due plaintiff from defendant one-half said sum, less one-half of $124.94, which the company owed Baker.

I. At the close of plaintiff's evidence, the defendant made a motion to direct a verdict in his favor as to count 3 of the petition on the ground that the testimony shows that

1. PARTNERSHIP: sharing of losses: evidence.

plaintiff and defendant were partners, and that this suit involves only an accounting between partners, and that an accounting cannot be had in a court of law. The motion was overruled, and, at the close of all the evidence, the motion was renewed and again overruled. At the close of all the evidence, the defendant moved to transfer the cause to equity as to count 3 for the same reasons, which was denied.

These two propositions may be considered together. The difficulty with defendant's claim at this point is that the record does not show a partnership between the parties.

The rule is that, as between the parties, there must be an agreement to share in the losses, as well as the profits, to constitute partnership. *McBride v. Ricketts*, 98 Iowa, 539.

The plaintiff was asked on cross-examination whether he was in partnership with Baker, and he answered that he was. This was merely a conclusion of the witness. In his testimony, in stating what the arrangement was, he did not state anything about the parties sharing losses, and his petition does not allege that they were partners. The defendant in argument says, as to this, that plaintiff alleged by inference only that the parties were copartners. Nor does the defendant's answer allege that they were partners; and the defendant in his testimony specifically denies that they were partners. At the trial there was some discussion between the court and counsel on this matter. The court asked counsel if plaintiff was a partner, and counsel for plaintiff stated that he was not; that there was no real partnership; it did not constitute

a partnership. "Court: Were they a corporation? Mr. Henry: No, sir; they were not a corporation. They entered into a contract with one another to organize this company on certain terms." Under this record, it seems clear that there was no partnership; and the rulings of the court on these matters were correct.

II. Propositions 6, 7, and 8 may be considered together. In these it is claimed by defendant that the court erred in submitting count 3 of the petition to the jury, and that the

2. CONTRACTS: action: evidence: instructions.

court erred in overruling the defendant's motion for a new trial on the third and seventh grounds thereof, because the evidence did not show that defendant sold any interest or property he had in the association, or that defendant had any interest in said company the subject of sale. If the arrangement between the parties had constituted a partnership, there is no doubt that either one could sell his interest therein. The fact that they were not partners, but were associated together in business, would give either an interest which they could sell. He could sell whatever interest he had in the business or association for what he could get to whoever would buy. There is evidence tending to show that defendant did sell his interest to Wilkinson & Mack.

As to the transaction between defendant and Wilkinson & Mack, Mr. Mack testified, in substance:

He [Baker] made an appointment for me to meet him at his office. He wanted to know if I wanted to get into a company myself. I wanted to resign my connection and my secretaryship with the Income Protective Association to go down to Missouri in the oil business. He showed me a plan of new literature and classifications he was getting out relative to the Income Protective Accident Association. So we finally agreed on what he would take for his plans and classifications; that he would devote his time to helping me along with the association to help me get started. The deal went through, and Baker ceased to be connected with the association. I paid him $600, less $124.94. This item of $124.94 was a credit

Mr. Baker had against the company for promoting expenses. He assigned the account to me as a former officer of the company. After the deal was so closed, I took charge of the company. Mr. Baker shortly thereafter ceased to have anything to do with it. Court: What did you buy? A. I bought the plans and literature that Mr. Baker had compiled and was then in the printing office. Court: Was that all you bought? A. That was all I could buy. Court: When you bought this man out you recognized that he had some interest in the company? A. No, sir. Court: What did you buy? A. Well, I did recognize that he had a little interest, and I bought this, and was elected secretary and treasurer. Court: And you bought all he had there? A. Yes, sir.

There was other evidence on this same matter. By this it will be seen that there was evidence to go to the jury on this proposition, and their verdict has support in the evidence. The verdict was for $255.50. The sale by Baker to Wilkinson & Mack was for $600; from this deduct $124.94, leaves $475.06. One-half of this is $237.53. To this amount add $18 for the items claimed in counts 1 and 2, and which were admitted, brings the verdict to $255.53. They may have ignored the 6 cents and taken just half of $475.

III. Complaint is made as to some of the instructions. It is said that in instruction No. 1 the court assumed that defendant had an interest in the company. We do not so read the instruction. In this instruction the court was simply stating to the jury what the plaintiff claimed; that is, stating the issues, the claims of the different parties. We do not think it is fairly open to the criticism of defendant's counsel. Nor do we think instruction No. 2 is subject to the criticism made. The court had a right to assume that the sale was for $600, as that was not disputed. Defendant himself and other of his witnesses so testified. In this instruction the court left it to the jury to determine whether the sum of $124.94 should be deducted from said $600. This instruction should be construed with others wherein the court gave the defendant's theory.

In instruction No. 3 the court told the jury, in substance, that the defendant conceded that he owed for the two items of loaned money in counts 1 and 2, and then instructed the jury as to the defendant's claim against plaintiff for expenses on a Missouri and Illinois oil proposition. There was a dispute between the parties as to whether plaintiff was liable for any such expenses. The court left it to the jury to determine which was right about that, and instructed that, if the jury found plaintiff was liable for one-half such expenses, to consider it in arriving at the verdict; but that, if they failed to so find, they should not consider the oil proposition, but confine themselves to the other items. In this there was no error.

3. Same: counterclaim: instructions.

Objection is made to some of the rulings of the court on the evidence. This question was asked defendant: "Q. State whether or not you formulated and got up the classifications shown in Exhibit 1?" Objection was made that this was immaterial, and objection was sustained. We fail to see the materiality of it. The defendant did testify, in answer to the next question, that he did put in labor on the exhibit referred to.

At one point in the trial the defendant moved to strike out the testimony "so far given as incompetent, irrelevant, and immaterial." The objection or motion was not sufficiently specific. It seemed to refer to all the testimony up to that point. Testimony had been given which was perfectly proper; and, further, the plaintiff had not concluded his testimony on that subject.

4. Evidence: motion to strike.

We find no error. *Affirmed.*