[Civ. No. 2039.   Fourth Appellate District.—August 11, 1938.]

DAISY L. WORCESTER, Appellant, v. THEATRICAL
ENTERPRISES CORPORATION (a Corporation),
Respondent.

Robert B. Burch and Robert B. Burch, Jr., for Appellant.

Stearns, Luce, Forward & Swing and Fred Kunzel for Respondent.

THOMPSON (GORDON), J., *pro tem.*—This is an appeal from a judgment notwithstanding the verdict, after verdict had been rendered in favor of plaintiff in a suit against the defendant theatre for injuries which plaintiff sustained by being kicked in the back by an intoxicated patron, while plaintiff was attending a motion picture show in defendant's theatre.

The facts are not in serious dispute. The plaintiff entered the theatre after purchasing a ticket, and was ushered to a seat. After being seated for some time, the usher was called and, because of annoyance by people in the rear eating popcorn, plaintiff was ushered to a seat directly in front of one Hahn. At that time, Hahn was slumped down in his seat, apparently asleep. After approximately one-half hour had elapsed, a large foot came down suddenly on top of plaintiff's shoulder, causing injury to her. After the occurrence, Hahn, whose foot had come down upon her shoulder, was found to be intoxicated. A trial was had before a jury and at the conclusion of the case, after a verdict for plaintiff in the sum of $1,000, defendant moved for a judgment notwithstanding the verdict, which motion was by the court granted.

Appellant contends: (1) That there was evidence from which the jury in rendering its verdict for the plaintiff, could have found the defendant negligent; and (2) that the violation by the employees of defendant of defendant's operating rules, was some evidence of negligence and a circumstance to be considered by the jury in determining whether the defendant was negligent.

As to the first contention of appellant, reliance is placed upon the testimony of the managing director of respondent

as to the policy of the theatre with respect to intoxicated persons in the theatre. The managing director testified to a definite policy, in that the cashiers, door men and all ushers were instructed to observe as carefully as possible, the conduct and demeanor of people as they bought tickets, and where they suspected or had any reason to believe that the person attempting to buy a ticket might be intoxicated and might not conduct himself properly inside, the instructions are not to sell that person a ticket. That when the door man is not absolutely certain on the question of intoxication, he always finds the aisle in which the particular party is going and he tells the usher to keep an eye on the patron suspected. In any case of disturbance, the usher is instructed to eject such persons from the theatre. There is also a definite policy as to sleeping patrons, in that no person is permitted to sleep in the theatre, and, if found to be sleeping because of intoxication, he is asked to leave.

The same witness testified that occasionally a person had come into the theatre perfectly sober and during the performance, had taken a few drinks from a bottle in his pocket. Everything was done to discourage this. The policy was to discover the intoxicated person before he entered and to prevent his entry, and to eject him if he became objectionable. Upon entering a theatre, a person passes five employees, all charged to be on the alert for intoxicated persons. When a patron is taken to his seat, an usher walks down the aisle with him.

Appellant testified that an usher took her and her husband to a seat and later returned and asked them to sit in another seat in front of a man in a sailor's uniform, slumped down in his seat asleep, "when suddenly a large foot came down on my left shoulder, right in front of my face. It was quite a shock. I moved down, bent forward and moved, attempting to push the foot off and, as I leaned forward, I was kicked in the back with the other foot, three very hard blows."

The intoxicated person was removed by two police officers who testified that the sailor was "exceptionally drunk"; that each officer took hold of an arm and escorted him downstairs in that manner.

There is no doubt that the respondent owed to the appellant a reasonable degree of care to see that she was not injured on the premises. However, the respondent was not an insurer of appellant's safety and could be held liable only where it knew, or should have known, of existing danger. There is no evidence of any actual knowledge on the part of respondent of the sailor's condition prior to the accident. Appellant relies upon the theory of constructive notice, in that the sailor was asleep prior to the accident and found to be intoxicated subsequent to the accident. Nothing in the record shows that any employee of the theatre saw the sailor asleep, although he was seen by appellant and her husband; nor is there any evidence to warrant the conclusion that in the exercise of ordinary care, respondent should have discovered the intoxicated condition of the sailor. There must be more evidence than mere surmise or conjecture, from which an inference of negligence can be drawn. (*Curry* v. *Williams*, 109 Cal. App. 649 [293 Pac. 623].)

Appellant contends that the case of *Ratcliff* v. *San Diego Baseball Club*, 27 Cal. App. (2d) 733 [81 Pac. (2d) 625], is decisive of the case at bar. In that case, however, this court said:

"The respondent having purchased a ticket which entitled her to a seat in the protected section of this grandstand, was proceeding thereto along the passageway which had been provided for that purpose by the appellant. While the appellant was required to exercise only ordinary care in protecting the respondent from such an injury as this while she was proceeding along the passageway thus provided, that duty was not performed if such an occurrence as this should have been reasonably anticipated by the appellant. Under the circumstances here appearing, it cannot be said, as a matter of law, that such a happening as here occurred could or should not have been anticipated. There is ample evidence that bats rather frequently slip from the hands of batters and that such occurrences are not unusual, although they may not occur in every game."

In that case, there was evidence disclosing a condition sufficient to require the appellant baseball club to exercise ordinary care to protect their patrons from injury. This was was not done and the baseball club had knowledge which

required it to take precautions to further protect its patrons under the circumstances there existing.

In this present appeal there is no evidence of a similar occurrence of an intoxicated patron kicking another patron in the back, nor is there any evidence of any knowledge on the part of the respondent that a similar occurrence had taken place.

■ As a second ground of appeal, appellant contends that there was a violation of the operating rule made by respondent, "that the cashier, ticket taker and usher had strict instructions not to admit intoxicated persons, to eject persons found to be intoxicated, to not permit drinking in the theatre and to awaken sleeping patrons to ascertain whether they were intoxicated". It is urged that, while not negligence *per se*, yet it is sufficient evidence of negligence. There is no merit to this contention, as there is nothing in the record to show that there was a violation of this rule. Appellant did not call the usher's attention to the sleeping patron, nor is there any evidence that the usher knew of this sleeping patron, which would put him on notice to inquire whether said patron was asleep or intoxicated. The fact that one goes to sleep in a theatre does not, of itself, indicate intoxication.

The trial court did not err in granting the motion for judgment notwithstanding the verdict.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 10, 1938.