WAYNE FOUST, a minor, by Ray Foust, his father and next friend, and RAY FOUST, appellants, v. GEORGE R. KINLEY, RAY KINLEY and JOHN F. KINLEY, d/b/a AIRPORT DRIVING RANGE, appellees.

No. 50701.

(Reported in 117 N.W.2d 843)

NOVEMBER 13, 1962.

REHEARING DENIED JANUARY 15, 1963.

Rex Darrah, of Des Moines, for appellants.

Whitfield, Musgrave, Selvy, Fillmore & Kelly, by James Lorentzen, of Des Moines, for appellees.

MOORE, J.—This is a law action by Wayne Foust, a minor, by his father, Ray Foust, and Ray Foust to recover damages, including medical expenses, sustained by Wayne when struck by a golf club at defendants' driving range. At the close of plaintiffs' evidence the court sustained defendants' motion for a directed verdict. Plaintiffs have appealed from judgment thereon. We agree with the trial court.

I. In considering the propriety of a directed verdict for defendants the court gives plaintiffs' evidence the most favorable construction it will reasonably bear. Rule 344(f)(2), Rules of Civil Procedure, adopted September 17, 1962.

The evidence is that on April 24, 1960, at about 5:45 p.m. Wayne Foust, age 14, went to the Airport Driving Range operated by defendants. He was accompanied by Eddie Donaldson, age 12 or 13, and Susan Donaldson, age 11. Wayne and Eddie paid 75¢ to the only attendant present, each received a basket of balls, a conventional size golf club and went out to the driving area as each had done on prior occasions. The driving range is on the east side of Fleur Drive. Entrance thereto is through a small building from which the patrons go east a short distance to the long cement platform which from Exhibit 1, a photograph, appears to be approximately 3½ feet wide. It lies from north to south and is divided into stalls from 8 to 9½ feet in length. The balls are driven east into a large open field. At the south end of each stall is a feeder box, extending across the platform which serves as a divider for the stalls. It is 11 inches high and about 8 inches thick. The balls are put in this feeder box. They are automatically teed about a foot north of the box, a short distance from the east edge of the stall. Immediately to the north of the tee is a rubber mat on which the patron stands while making his drive (Wayne and Eddie were both right-handed). From the north edge of the mat the bare cement platform extends to the next feeder box and stall, a distance of about three feet.

Eddie took the stall south of Wayne, deposited his balls in the feeder box and drove two or three balls before his club struck Wayne in the face resulting in the loss of several teeth.

Wayne while attempting to put his balls in his feeder box

spilled them on the platform. Some went off the cement to the southeast near the east edge of Eddie's stall. While attempting to retrieve his golf balls Wayne was struck by the club swung by Eddie after driving a ball. There is a dispute in the evidence as to whether Wayne was in his own stall or in front of Eddie's when injured. He was bending over picking up balls and did not see Eddie's club just before being hit.

No instructions were offered to or requested by the boys. No warning signs were posted. No evidence was submitted of prior injury or misconduct of any person at the range.

Defendants' motion for directed verdict asserted plaintiffs had failed to sustain the burden of proving negligence, proximate cause and freedom from contributory negligence. It was sustained on all grounds by the trial court. Plaintiffs' only statement relied on for reversal is the court erred in directing a verdict.

Plaintiffs alleged defendants were negligent in failing to provide: (a) proper supervision, (b) proper shields, guards or barriers between the areas used by patrons, (c) large enough area to prevent clubs reaching area used by other patrons, (d) an area for Wayne Foust which was safe from clubs swung by other minors and (e) to give proper warning of danger of being hit by golf clubs. They also claimed defendants were negligent in putting a dangerous instrumentality in the hands of a minor.

The principal argument is whether plaintiffs' evidence was sufficient to create a jury question on negligence.

II. It appears without dispute Wayne Foust was a business invitee of defendants. Defendants owed the duty to exercise reasonable care to have their premises reasonably safe for invitees. If not so, they had the duty to remedy the defect or danger or to warn the invitee who in the exercise of reasonable care did not know of the defect or danger. Nelson v. Langstrom, 252 Iowa 965, 970, 108 N.W.2d 58, 61; Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 275, 106 N.W.2d 579, 582; Vollmar v. J. C. Penney Co., 251 Iowa 1026, 1028, 103 N.W.2d 715, 716, and citations.

Plaintiffs' evidence does not establish any violation of this duty as it appears no hidden defects existed and Wayne Foust

was fully aware of all of the conditions existing on the premises.

■■ III. The law is well established that a proprietor of a place of public amusement or entertainment is held to a stricter account for injuries to patrons than the owner of private premises generally. He is not an insurer of the safety of patrons but owes to them only what, under the particular circumstances, is ordinary and reasonable care. He must guard them not only against dangers of which he had actual notice but also against those he should reasonably anticipate. Failure to carry out such duty is negligence. Priebe v. Kossuth County Agr. Assn., Inc., 251 Iowa 93, 99 N.W.2d 292; Dahna v. Clay County Fair Assn., 232 Iowa 984, 6 N.W.2d 843; Clark v. Monroe County Fair Assn., 203 Iowa 1107, 212 N.W. 163; Williams v. Mineral City Park Assn., 128 Iowa 32, 102 N.W. 783, 1 L. R. A., N. S., 427, 111 Am. St. Rep. 184, 5 Ann. Cas. 924. See also annotations, 16 A. L. R.2d 912; 29 A. L. R.2d 911.

We are particularly concerned here with the duty owed by the operator of a place of amusement to protect patrons from injuries caused by acts of third parties.

■ The controlling principle is stated in section 348, Restatement, Torts, as follows: "* * * possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such a purpose for bodily harm caused to them by the accidental, negligent or intentionally harmful acts of third persons or animals if the possessor by the exercise of reasonable care could have (a) discovered that such acts were being done or were about to be done, and (b) protected the members of the public by (1) controlling the conduct of the third persons, * * *."

In Ruehling v. American Legion Pavilion, 255 Minn. 391, 392, 393, 96 N.W.2d 702, 703, 704, the court held the dance hall owner not liable to a patron injured by being knocked down by boys near the pavilion entrance. The court said:

"Basic to liability of a keeper of premises is that negligence is predicated upon what should have been reasonably anticipated and not merely upon what happened. As stated in Johnson v. Amphitheatre Corp., 206 Minn. 282, 285, 288 N.W. 386, 387:

" '* * * It is true that the operator of a public amusement

place is not an insurer of the safety of patrons and is not responsible for unanticipated dangers created by some one of such patrons to the injury of another. But he is obligated to use ordinary care * * *.'

"The standard of ordinary care to be exercised by the operator of a public amusement place is that which would be exercised by a reasonably prudent person under the same or similar circumstances and does not require the taking of precautionary measures to avert a danger which a reasonable person would not anticipate as likely to happen."

The Minnesota court at page 395 of 255 Minn., page 705 of 96 N.W.2d said:

"Knight v. Powers Dry Goods Co., Inc., 225 Minn. 280, 30 N.W.2d 536, * * * is a case very similar to the one at bar. There two detectives stopped a thief as he left defendant department store with stolen books. He quietly consented to accompany the detectives to the store office. Suddenly, while waiting for the elevator, the thief broke loose and ran, mowing down and injuring plaintiff. In reversing the verdict for plaintiff and ordering judgment for defendant, we relied upon the fact that, prior to his sudden charge, the thief had evidenced no indication of any forthcoming violent action. If the act of catching a thief with stolen goods is in and of itself no indication from which a proprietor could anticipate injury to other patrons, neither is a group of youths gathered about the doorway to a dancehall a fact from which injury to others is reasonably foreseen."

In Fitzgerald v. Million Dollar Theatre, 61 Cal. App.2d 17, 19, 141 P.2d 935, 937, the court held a theatre proprietor was not liable to plaintiff injured while sitting in the theatre and accidentally kicked by another patron. No evidence of prior notice was submitted. The court said:

"The case of Worcester v. Theatrical, etc., Corp., 28 Cal. App.2d 116, 119 [82 P.2d 68, 69], which was an action for damages for personal injuries brought by plaintiff, a patron of defendant's theatre, who was kicked by a sailor sitting behind her apparently asleep, but who was later found to be intoxicated— answers appellant's first point in the following language: 'There

is no doubt that the respondent owed to the appellant a reasonable degree of care to see that she was not injured on the premises. However, the respondent was not an insurer of appellant's safety and could be held liable only where it knew, or should have known, of existing danger. There is no evidence of any actual knowledge on the part of respondent of the sailor's condition prior to the accident.'"

In Emerson v. Riverview Rink and Ballroom, 233 Wis. 595, 598, 290 N.W. 129, 130, plaintiff was injured at defendant's roller skating rink by being run into and knocked down by another patron. The court said:

"It is the general rule that the owner of a place of amusement is not an insurer of the safety of the patrons but owes to them only what under the particular circumstances is ordinary or reasonable care. * * * The respects in which defendant is charged with a breach of duty are that it either failed to provide sufficient guards to enforce the rule against fast skating in the portion of the rink outside of the railing or that the guards provided negligently failed to discharge their duties of patrol. We conclude that the evidence does not sustain the findings. Assuming that the proprietor had a duty to provide guards or patrols to police the outside areaway of this rink and prevent fast or dangerous skating in that portion of the rink, we discover no evidence that the number of guards provided was insufficient to meet the needs of the rink and render it reasonably safe. Further than this, we find no evidence on which to base an inference that the skaters who collided with plaintiff should, in the exercise of ordinary care, have been noticed by the guards and required to desist from their manner of skating. There is no evidence as to how long or how fast this couple had been skating, and no evidence from which it could be concluded that their manner of skating was such as should have attracted the attention of the guards and resulted in intervention prior to the accident."

In Noonan v. Sheridan, 230 Ky. 162, 164, 18 S.W.2d 976, 978, the court held as a matter of law a storekeeper was not liable to a customer for injuries sustained when struck by a roll of linoleum toppled over by boys playing about the store, as

there was no showing the linoleum was not standing securely and no prior notice of the conduct of the boys. The court held the storekeeper was not liable for the negligent act of a third party which he had no occasion to anticipate or foresee. The court said: "It is the general rule that an independent act of negligence by a third party is an occurrence which the defendant is not as a general rule bound to anticipate."

In Dahna v. Clay County Fair Assn., 232 Iowa 984, 6 N.W.2d 843, we held the Fair Association was not liable for plaintiff's injuries when the crowd in the amphitheater, at the conclusion of the performance, hurriedly walked down over the seats to the exits which resulted in plaintiff being bumped and injured. In the opinion we quoted at pages 988, 989, of 232 Iowa, page 845 of 6 N.W.2d, from the often cited case of Hawkins v. Maine & New Hampshire Theaters Co., 132 Maine 1, 5, 164 A. 628, 629.

" 'It was under no obligation to provide an attendant for every child, or to anticipate the isolated, wilful and sudden act of one boy, the natural tendency of which was to inflict serious harm upon another. There is no evidence that such an incident ever had happened before or that the defendant had any warning whatsoever that it was likely to take place. It was not a danger which it was bound to have foreseen or to have guarded against.' "

The annotation in 16 A. L. R.2d 912, at 932, says:

"It is not uncommon for patrons of public amusements to be injured as a result of the horseplay, boisterousness, or other playfulness of others. It has been held or recognized that the proprietor or operator of such an amusement is liable to the patron for injuries thus sustained, provided he had sufficient notice to enable him to stop such activities."

In Priebe v. Kossuth County Agr. Assn., Inc., 251 Iowa 93, 99 N.W.2d 292, the plaintiff, an exhibitor at defendant's county fair, was injured when a boy rolled under and against the legs of a heifer being held by plaintiff, causing the animal to rear up on its hind legs and come down with the front hoofs on plaintiff's leg, severely injuring her. The trial court directed a verdict for defendant. We reversed. The evidence showed a group of

boys had been tearing around the premises all that morning before the accident. At page 99 of 251 Iowa, page 296 of 99 N.W.2d, we said:

"It may be conceded that if the conduct of the boy who struck the calf here were a sudden, isolated act which could not reasonably have been anticipated, the trial court's ruling was right. But we think reasonable minds might fairly conclude defendant could reasonably have foreseen someone might be injured from the conditions it permitted to exist, without any attempt to remedy them, for a considerable time on the day in question."

IV. In the case at bar both boys had been at the driving range on prior occasions. It would have been proper for plaintiff to submit evidence of any prior misconduct by Eddie or any other patron if such existed. In Nelson v. Langstrom, 252 Iowa 965, 970, 108 N.W.2d 58, 61, we said:

"It would have been proper for plaintiff to have shown similar accidents and that defendants knew of them. We held evidence of similar accidents admissible to show knowledge of a dangerous condition in Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120. And in Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1264, 1265, 30 N.W.2d 97, 103, 104, after a thorough examination of the authorities we held the absence of accidents at the same place as tending to show absence of danger and lack of knowledge thereof by a party claimed to be at fault admissible. See also Wigmore's Code of Evidence, rule 66, article 7, section 443; rule 77, article 4, section 536; and McCormick on Evidence, section 167, pages 353, 354."

The facts establish beyond question that if Wayne had remained in his driving stall, Eddie's club could not have touched him unless Eddie moved off the rubber mat onto the cement in the north part of his stall. If Eddie had remained on the mat Wayne could have been injured only as a result of his moving over in front of Eddie's stall. Plaintiffs' evidence clearly shows Wayne was injured as a result of a sudden, isolated act which could not have been anticipated. To hold otherwise would impose liability on hindsight rather than faulty or defective foresight.

We hold plaintiffs' evidence failed to create a jury question on any of the pleaded specifications of negligence.

Other grounds of the motion for directed verdict need not be considered.—Affirmed.

HAYS, LARSON, THOMPSON, PETERSON and SNELL, JJ., concur.

GARFIELD, C. J., and THORNTON, J., dissent.

STUART, J., takes no part.