Bruce V. GALLOWAY, Appellant,

v.

BANKERS TRUST COMPANY, Trustee d/b/a Midlands Mall, Maenner Company, American Security Services, Inc., and First National Bank of Chicago, Appellees.

No. 86–1879.

Supreme Court of Iowa.

March 16, 1988.

Thomas L. Spellman of Spellman, Spellman, Spellman, Spellman, Spellman & Kealhofer, Perry, and Ronald J. Palagi, Omaha, Neb., for appellant.

Philip Willson of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee Maenner Co.

Milton A. Katskee of Katskee & Henatsch, Omaha, Neb., and David F. McCann of Dippel & McCann, Council Bluffs, for appellee American Sec. Services, Inc.

David M. Woodke of Gross, Welch, Vinardi, Kauffman & Day, P.C., Omaha, Neb., for appellees Bankers Trust Company d/b/a Midlands Mall and First Nat. Bank of Chicago.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO and SNELL, JJ.

LARSON, Justice.

Bruce V. Galloway sued several parties involved in the ownership and management of the Midlands Mall, a shopping center in downtown Council Bluffs, as well as the company employed to provide security for it. (We will refer, in most instances, to the defendants collectively as "the mall.") Galloway's suit was based on the mall's alleged failure to protect him from a homosexual rape in a restroom in the mall. The district court sustained the mall's motion for summary judgment on the basis that the attack was not reasonably foreseeable, and Galloway appealed. We affirm in part, reverse in part, and remand.

I. *Foreseeability.*

■ Our analysis of the foreseeability question must begin with an examination of *Martinko v. H–N–W Associates,* 393 N.W.2d 320 (Iowa 1986). In *Martinko,* a young woman was murdered in her car in the parking lot of a new shopping mall in Cedar Rapids. The district court granted the shopping mall's motion for summary judgment, and the plaintiff appealed. We applied the Restatement rule of premises liability which provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the ... intentionally harmful acts of third persons ... and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it.

Restatement (Second) of Torts § 344, at 223–24 (1965).

A comment to section 344 discusses the case of an injury to a visitor caused by a third party:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care *until he knows or has reason to know that the acts of the third person are occurring, or are about to occur.* He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, *or his past experience,* is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Restatement (Second) of Torts § 344 comment *f,* at 225–26 (emphasis added).

In *Martinko*, we noted two significant problems in the foreseeability aspect of the plaintiff's case. First, the mall was new, with no history of prior criminal activity of any kind. The plaintiff showed only that the defendants had had prior problems in other malls in which they had an interest. Furthermore, the plaintiff failed to show "that shopping malls are businesses characterized by a *likelihood* that third persons may endanger their patrons." *Martinko*, 393 N.W.2d at 322 (citing Restatement (Second) of Torts § 344 comments *d, f*).

In contrast to *Martinko*, the plaintiff in the present case showed a past history of criminal activities at Midlands Mall and also produced the affidavit of an expert who said the danger of injury by a third party was significant.

The mall acknowledges that it has had some history of criminal activity, however, it focuses on a footnote in *Martinko* which says: "In the absence of a history of *similar* acts in the area in question, most jurisdictions have not allowed plaintiffs to present their claims to juries." 393 N.W.2d at 322 n. 3 (emphasis added). The mall argues that a record of *some* criminal activity is not sufficient to establish foreseeability; it must be a history of similar crimes. The district court agreed; the criminal activities which had occurred at the mall were not "similar" under the *Martinko* rule.

The security officers' incident reports in the present case show a variety of past criminal activity. As might be expected, most of them involved shoplifting. There was, however, a report of an "assault" on a young boy by a man in the mall; a person was apprehended with a gun in the Sears store in the mall; and a possible robbery of a patron was reported. Assaults between patrons and violence toward store property were also reported. A representative year, 1983, revealed these statistics:

| | |
|---|---|
| Shoplifting | 29 |
| Trespass | 4 |
| Beer in parking lot | 3 |
| Vandalism | 2 |
| Robbery | 1 |
| Open door | 1 |
| Medical emergency | 1 |

With the possible exception of the report showing an assault on the young boy, there were no prior reports involving assaults of a sexual nature; in fact, there were not a large number of crimes of any kind directed toward persons. We do not believe, however, that crimes initially directed toward property are without any probative value on the question of foreseeability of injury. As one court has noted,

[c]riminal activity is not easily compartmentalized. So-called "property crimes," such as shoplifting, may turn violent if a chase ensues and, as the evidence in this case indicates, family quarrels may become violent with the risk that deadly weapons may be used. Moreover, the repetition of criminal activity, regardless of its mix, may be sufficient to place the property owners on notice of the likelihood that personal injury, not merely property loss, will result.

*Jardel Co. v. Hughes*, 523 A.2d 518, 525 (Del.1987) (citations omitted).

The evidence in the present case supports the observation in *Jardel* that even shoplifting cases can turn ugly. Midlands Mall security officers reported that one fleeing shoplifter was found to possess a gun, one slashed at a guard with a knife, and another tried to run down a guard with his car.

The court in *Jardel* concluded:

In view of the standard of foreseeability envisioned by § 344 of the Restatement, we cannot conclude that the crime statistics presented by the Dover Police [including property crimes] were misleading or irrelevant. As previously noted, crimes of whatever type and whenever occurring on the premises are part of the circumstantial setting in which security needs are measured.

*Id.* at 526.

Anthony Potter, the expert used by Galloway to establish his claim of foreseeability, presented impressive credentials. He was certified by the American Society for Industrial Security and had served nineteen years as security chief, consultant, and lecturer in the field of security. He had also served for fourteen years as a faculty

member of the International Council of Shopping Centers Management Institute and had published over eighty articles in various professional and trade journals on the subject of security. He stated he had performed security audits of regional shopping centers throughout the United States and had testified as an expert in both federal and state courts.

Potter's affidavit stated that he had reviewed the pleadings, depositions, and incident reports in this case and concluded that the assault on Galloway was foreseeable by the defendants "due to the high incidents of criminal activity in public restrooms in regional shopping centers generally and previous incidents of crimes against persons including assaults on patrons at Midlands Mall."

While there are cases, like *Martinko,* in which evidence of foreseeability is held to be so speculative that a genuine issue of fact is not generated, questions of foreseeability are ordinarily for the fact finder. *See, e.g., Isaacs v. Huntington Memorial Hosp.,* 38 Cal.3d 112, 126, 695 P.2d 653, 659, 211 Cal.Rptr. 356, 362 (1985) (foreseeability of assault of doctor in hospital parking lot). In general tort law, there is a "quite universal agreement that what is required to be foreseeable is only the 'general character' or 'general type' of the event or the harm, and not its 'precise' nature, details, or above all [the] manner of [its] occurrence." *Prosser and Keaton on the Law of Torts* § 43, at 299 (5th ed. 1984).

Other courts have held that prior, nonviolent, incidents may provide a basis for a finding of foreseeability of personal-confrontation crimes. *See, e.g., Isaacs,* 38 Cal. 3d at 126, 695 P.2d at 658, 211 Cal.Rptr. at 361 (foreseeability of assault based in part on nonviolent incidents); *Foster v. Winston–Salem Joint Venture,* 303 N.C. 636, 281 S.E.2d 36, 40 (1981) (foreseeability based in part on history of nonviolent acts); *Murphy v. Penn Fruit Co.,* 274 Pa.Super. 427, 418 A.2d 480, 483 (1980) (foreseeability of stabbing in parking lot with history of nonviolent acts).

A history of crimes against persons would, of course, make a stronger case of foreseeability, but we do not believe it is a prerequisite to proof of foreseeability. For the reasons already discussed, "similar" acts as required by *Martinko* may include crimes in general. Accordingly, we hold that the court erred in granting summary judgment in favor of the defendants on the ground of foreseeability.

II. *Other Issues.*

A. *American Security Services' Issues.* American Security has raised separate arguments which bear on the question of foreseeability. We reject them for the reasons already discussed; there is a genuine issue of fact on foreseeability and we will not resolve it as a matter of law.

American Security asserts three additional grounds for affirmance which bear separate consideration. First, it claims that the assault was an intervening cause which it could not foresee. *See Cornpropst v. Sloan,* 528 S.W.2d 188, 198, 93 A.L.R.3d 979, 993 (Tenn.1975) (held assault to be sole proximate cause); *Prosser and Keaton on the Law of Torts* § 33, at 201 (less reason to foresee criminal acts of third party than those which are merely negligent). We believe that the likelihood that such an act would occur is only one factor to be considered by the fact finder on the question of foreseeability. This is not the "exceptional case" in which the question of proximate cause should be decided as a matter of law. *See* Iowa R.App.P. 14(f)(10).

Second, American Security argues that, while it was required by its contract with the mall to provide security, it was only to provide for security of the mall itself, not its patrons. Moving from this premise, American Security argues that even if Galloway were treated as a third-party beneficiary of the contract, he has no case against American Security. We disagree; the contract provided for protection in this language:

DUTIES: Contractor will assist Bankers Trust's managing agent in preparing policies and procedures for the protection of Midlands Mall Property assets, tenants,

and *customers.* Specific duties include, *but are not limited to,* patroling, traffic control, reporting, physical plant, arrests, and assisting customers and tenants.

(Emphasis added.)

Third, American Security argues that the affidavit of Galloway's expert, Potter, must be disregarded, because it consists of "mere opinions and conclusions." Affidavits are properly used in resistance to a motion for summary judgment. *See* Iowa R.Civ.P. 237(c), (e). Moreover, while it is true that it is purely an opinion, that is the nature of expert testimony. We reject this argument as well.

■ B. *First National Bank's Additional Issue.* Section 344 of the Restatement imposes liability on a "possessor of land," and section 328E provides this definition:

A possessor of land is

(a) A person who is in occupation of the land with intent to control it, or

(b) A person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) A person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts § 328E, at 170 (1965).

The First National Bank of Chicago contends it cannot be held liable for premises injury under section 344, because it was not in possession of the mall at the time of the incident, nor did it have any control over its management.

The exact nature of First National's interest in the mall is not easily definable. It does not have legal title to the land; title is in Bankers Trust as "ancillary trustee" under a trust agreement with First National Bank as trustee. Under the trust agreement, Bankers Trust is to remit the net profits from the operation of the mall to First National, but First National itself has no direct control or right of possession of the mall.

First National's interests are, in fact, very similar to those of an absentee owner of rental property. In such a case, the mere fact of ownership is not sufficient to impose liability for premises defect. While ownership includes the right of possession and control, "possessory rights may be 'loaned' to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility." *Merritt v. Nickelson,* 407 Mich. 544, 553, 287 N.W.2d 178, 181 (1980); *cf. Lunde v. Winnebago Indus., Inc.,* 299 N.W.2d 473, 479–80 (Iowa 1980) (owner of real estate who transferred possession to contractor not liable simply by reason of ownership of property); Restatement (Second) of Torts § 422 comment *c* (no liability of owner when possession surrendered to contractor).

In the present case, First National had the power to remove Bankers Trust as the ancillary trustee and, presumably, regain the full incidents of ownership, including the right of possession. At the time of this occurrence, however, it had not done so; it had relinquished possession and control to Bankers Trust. First National therefore did not qualify as a "possessor of land" under the Restatement rule. On that issue, there is not a genuine issue of fact. We believe the district court would have been correct in sustaining First National's summary judgment motion on this ground.

We will affirm an appeal where any proper basis appears for the trial court's ruling, even though it is not the one upon which the court based its ruling. *Citizens First Nat'l Bank v. Hoyt,* 297 N.W.2d 329, 322 (Iowa 1980); *Smiley v. Twin City Beef Co.,* 236 N.W.2d 356, 360–61 (Iowa 1975); *Buchhop v. General Growth Properties and Gen. Growth Management Corp.,* 235 N.W.2d 301, 304 (Iowa 1975).

We affirm the dismissal of the petition as against First National and reverse and remand for proceedings against all of the remaining defendants.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Justices concur except HARRIS, J., who dissents from Division I.

**442**

HARRIS, Justice (dissenting).

I respectfully dissent. Under our holding in *Martinko v. H–N–W Associates*, 393 N.W.2d 320 (Iowa 1986) the trial court holding was correct. I am persuaded that nothing in the past history of criminal activities would cause these defendants to foresee the tort alleged here. I would affirm.